# IN THE COURT OF APPEALS OF IOWA

No. 18-1748
Filed October 9, 2019

**KAREN H. SALTERN,**
    Plaintiff-Appellant,

**vs.**

**HNI CORPORATION and GALLAGHER BASSETT SERVICES, INC.,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Muscatine County, John D. Telleen, Judge.

An employee who brought a bad-faith claim against her employer appeals the denial of her motion for partial summary judgment and the grant of the employer's motion for summary judgment. **AFFIRMED.**

Anthony J. Bribriesco, Andrew W. Bribriesco, and William J. Bribriesco, Bettendorf, for appellant.

Amanda M. Richards of Betty, Neuman & McMahon, P.L.C., Davenport, for appellees.

Considered by Vaitheswaran, P.J., and Tabor and Greer, JJ.

**TABOR, Judge.**

After years of repetitive sewing for a furniture manufacturer, Karen Saltern developed bilateral carpal tunnel syndrome and asked her employer, HNI Corporation, to pay workers' compensation. HNI and its third-party claims administrator, Gallagher Bassett Services, disputed the injury rose out of and in the course of her employment. Several years later, they agreed to pay her claim, based on medical opinions the carpal tunnel syndrome was a work-related injury.

Saltern sued HNI and Gallagher for bad faith in denying her claim. On cross-motions for summary judgment, the district court decided Saltern could not prove the first bad-faith element—that the employer lacked a reasonable basis for denying benefits. The court ruled HNI was entitled to judgment as a matter of law.[1] Saltern appeals that ruling. Finding no legal error in the court's conclusions, we affirm summary judgment dismissing Saltern's claims against HNI.

## I. Facts and Prior Proceedings

Saltern worked as a technical sewer for HNI at its furniture manufacturing plant. HNI is self-insured and contracts with Gallagher to administer its workers' compensation claims.

In 2009, Saltern suffered a work-related injury to her neck, which HNI paid. In March 2011, Saltern saw a medical provider complaining of pain, numbness, and weakness in her neck, shoulder, and arms. Further testing led to the diagnosis of bilateral carpal tunnel syndrome. HNI was unaware Saltern went to these appointments until May, when Saltern requested approval to see a pain specialist.

---

[1] The district court dismissed Gallagher from the bad-faith case as a third-party administrator not liable to Saltern. Saltern does not challenge that ruling on appeal.

In June, Saltern filed a new workers' compensation claim alleging she experienced injuries on the job. That same month, HNI—through Gallagher—asked Saltern to provide information on her doctor visits. But after the employer made many phone calls and propounded discovery requests, the providers still had sent no medical records. HNI denied the compensability of her claim in July 2011. But in a letter to Saltern's counsel, HNI said it was continuing its investigation, "including hopefully obtaining medical records once we have learned from you with whom Ms. Saltern has been treating."

In September, Saltern saw a pain specialist who diagnosed her with cervical radiculopathy resulting from the 2009 injury. But the specialist concluded the carpal tunnel did not stem from the same incident.

In April 2012, Saltern voluntarily dismissed her claim. HNI continued to seek proof of Saltern's injury, including placing eight unanswered calls to her primary provider, Dr. Calvin Atwell. Six months later, Saltern refiled her claim. HNI again denied the claim in mid-October 2012. In her testimony, Saltern acknowledged she was unaware of any documented medical evidence verifying the causal connection between her work and the carpal tunnel diagnosis.

In March 2013, Saltern attended an independent medical examination (IME) with Dr. Robin Sassman. Dr. Sassman concluded Saltern's carpal tunnel stemmed from her employment. In April, Dr. Atwell formed the same opinion. Later that month, Saltern informed HNI of these new opinions connecting her injury to her work. HNI asked Saltern to be evaluated by Dr. Ericka Lawler. Saltern complied. In early September 2013, HNI received Dr. Lawler's report, which echoed the

causation findings of Drs. Sassman and Atwell. HNI then agreed the injury was compensable and started paying Saltern healing period benefits.

Following an arbitration hearing, an administrative law judge (ALJ) found HNI failed to communicate its reasons for denying Saltern's claims. The ALJ imposed a penalty against HNI for this failure. The district court affirmed the penalty on judicial review.

In May 2016, Saltern filed this derivative lawsuit for the common-law tort of bad faith. Her suit alleged HNI and Gallagher denied her workers' compensation claim in bad faith when they knew her injury was caused by her repetitive work as a technical sewer.

Saltern filed a motion for partial summary judgment asking the court to find as a matter of law that HNI did not have a reasonable basis for denying her workers' compensation claim. HNI filed a cross-motion for summary judgment finding Saltern could not carry her burden to prove HNI did not have a reasonable basis to deny the claim. The district court denied Saltern's motion for partial summary judgment and granted HNI's cross-motion. Saltern appeals.

## II. Scope and Standard of Review

We review a summary-judgment ruling for correction of legal error. *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). "Summary judgment is proper when the moving party has shown there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quotations and citations omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fees v. Mut. Fire & Auto. Ins. Co.*, 490 N.W.2d 55, 57 (Iowa 1992). "We view the

evidence in the light most favorable to the nonmoving party." *UE Local 893/IUP v. State*, 928 N.W.2d 51, 59 (Iowa 2019) (citation omitted).

### III. Analysis

In granting HNI's motion for summary judgment the district court found when HNI first denied Saltern's claim, it "had not received even a modicum of information from Saltern, her counsel, or her treating physicians on the subject of how her carpal tunnel injury was causally related to her employment at HNI." The court noted Saltern admitted that when she both filed and refiled her claim, she "possessed no medical opinion relating her injury to her employment." Thus, "[a]s a matter of law, [HNI's] conduct of Saltern's case—and [its] initial denial of the claim—was not unreasonable and cannot constitute bad faith." The court rejected Saltern's argument HNI conducted an inadequate investigation and her attempt to shift the burden of proving the lack of an objectively reasonable basis onto HNI.

On appeal, Saltern contends the district court erred in finding HNI had a reasonable basis to deny the claims. After a denial of workers' compensation, a plaintiff asserting the tort of bad faith must prove: (1) "the insurer had no reasonable basis for denying benefits" and (2) "the insurer knew, or had reason to know, that its denial was without basis." *McIlravy v. N. River Ins. Co.*, 653 N.W.2d 323, 329 (Iowa 2002). "The first element is objective, the second subjective." *United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 657 (Iowa 2002).

"A reasonable basis exists for denial of policy benefits if the insured's claim is fairly debatable either on a matter of fact or law." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005) (citations omitted). Fairly debatable

means "open to dispute on any logical basis." *Id.* (describing "fairly debatable" as a situation when reasonable minds may differ on the coverage). "Whether a claim is fairly debatable can generally be decided as a matter of law by the court." *Id.*

In arguing her claim was not fairly debatable, Saltern disputes the district court's finding that HNI had not "even a modicum of information" showing her employment caused her carpal tunnel injury. She argues HNI knew the nature of her work. In fact, an initial report from a Gallagher adjuster predicted her injury "will likely be accepted due to Ms. Saltern's performing repetitive work for HNI." She also highlights the ALJ ruling faulting HNI for not communicating its reasoning for denying the claim. In her view, a reasonable jury could infer from the lack of communication that HNI knew it had no reasonable basis to deny the claim. For these reasons, according to Saltern, the district court erred in concluding the claim was fairly debatable and that HNI was entitled to summary judgment.

Contrary to Saltern's view, her claim for benefits was "fairly debatable" when HNI denied it. When employees seek workers' compensation, they have the burden to show the injury arose in the course of their employment. *See Lakeside Casino v. Blue*, 743 N.W.2d 169, 175 (Iowa 2007). Without supporting evidence, the claim remains "open to dispute" on the question of causation.

HNI knew of her 2009 neck injury. But Saltern did not make HNI aware of her March 2011 doctor visit until May. HNI denied her requests for benefits in July. Saltern voluntarily dismissed but refiled her claim in October. HNI again denied the claim in mid-October 2011. But in neither July nor October did Saltern present evidence to HNI that her injury related to her work. By her own admission, no such evidence existed until after the doctors reported on her March and April exams.

Saltern takes the oversimplified position that HNI should have granted benefits for her carpal-tunnel injury because it knew she performed repetitive tasks at work. In response, HNI cites *McIlravy* for the proposition that Saltern had the duty to present "evidence connecting the injury in some way to the work place environment." 653 N.W.2d at 331. We agree with HNI that Saltern's claim remained "fairly debatable" without affirmative evidence connecting her injury to her work. It is not enough for Saltern to advance a res-ipsa-loquitur-type claim that the nature of her work excused her from proving causation. *Cf. Zarecki v. Nat'l. R.R. Passenger Corp.*, 914 F. Supp. 1566, 1575 (N.D. Ill. 1996) (rejecting application of res ipsa loquitur as defense to motion for summary judgment in Federal Employers' Liability Act claim where worker alleged carpal tunnel resulted from computer keystroke repetitions). The district court was correct in determining HNI had a reasonable basis for denying Saltern's claim in July 2011 and October 2012.

On the timing issue, Saltern contends HNI lost any reasonable basis for its denial on April 11, 2013. That's when she served HNI with copies of the diagnostic reports from Dr. Sassman and Dr. Atwell that linked her carpal tunnel syndrome to her work.

HNI argues Saltern did not preserve error on the claim it acted in bad faith by continuing to deny her claim from mid-April 2013 until early September 2013. We agree Saltern did not timely raise that precise contention. Saltern did mention the April 2013 date in her petition: "On or before April 13, 2013, Defendants knew or should have known it was unreasonable to continue to deny [Saltern] workers' compensation benefits" because she sent HNI reports from Drs. Atwell and

Sassman. But Saltern did not rely on that date as an independent ground for her motion for partial summary judgment. In that motion, she asserted generally HNI lacked a reasonable basis to deny her claim. Nor did she cite the April 2013 date in her resistance to HNI's motion for summary judgment. After the court's order granting summary judgment to HNI, she moved to amend and enlarge under Iowa Rule of Civil Procedure 1.904 asking the court to consider the reasonableness of HNI's denial after April 11, 2013. HNI responded because she failed to raise that date earlier, she could not seek a modification or expansion of the court's ruling by referring to that new timeframe.[2]

The district court denied the motion to amend and enlarge "for the reasons set forth in Defendants' Resistance." Given the brevity of the denial, it is not clear which of HNI's reasons swayed the district court. But we know the court did not separately address the merits of the post-April 11, 2013 denial of benefits. So we decline to consider that argument on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Saltern next argues HNI did not meet its obligation to investigate under Iowa Code section 86.13(4)(c) (2011). HNI responds if an insurer has a reasonable basis to deny the claim, an incomplete investigation, standing alone, will not allow

---

[2] HNI also argued it had a reasonable basis to continue denying Saltern's claim from April to September 2013. Specifically, Dr. Sassman's report received in April noted Saltern had a history of diabetes which purportedly can cause carpal tunnel syndrome. Dr. Atwell also testified to this connection in his deposition. Thus HNI argues it was reasonable to continue to deny the claim until another IME confirmed causation. We don't address this alternative ground because we find Saltern failed to preserve error on HNI's continued denial from April to September 2013.

recovery for bad faith. *See McIlravy*, 653 N.W.2d at 331; *see also Gardner v. Hartford Ins. Accident Indem. Co.*, 659 N.W.2d 198, 206 (Iowa 2003) ("Where an objectively reasonable basis for denial of [a] claim actually exists, the insurer cannot be held liable for bad faith as a matter of law.").

Saltern points out the legislature amended section 86.13 in 2009, after *McIlravy*, imposing a duty on the employer to investigate before determining it will deny the claim. Section 86.13(4) now provides:

> a. If a denial, a delay in payment, or a termination of benefits occurs without reasonable or probable cause or excuse known to the employer or insurance carrier at the time of the denial, delay in payment, or termination of benefits, the workers' compensation commissioner shall award benefits in addition to those benefits payable under this chapter . . . .
> b. The workers' compensation commissioner shall award benefits under this subsection if the commissioner finds both of the following facts:
> (1) The employee has demonstrated a denial, delay in payment, or termination of benefits.
> (2) The employer has failed to prove a reasonable or probable cause or excuse for the denial, delay in payment, or termination of benefits.
> c. In order to be considered a reasonable or probable cause or excuse under paragraph "b", an excuse shall satisfy all of the following criteria:
> (1) The excuse was preceded by a reasonable investigation and evaluation by the employer or insurance carrier into whether benefits were owed to the employee . . . .

This amendment, according to Saltern, imposes an affirmative duty on the employer to possess facts as a result of investigation before denying the claim.[3]

---

[3] Saltern cites a decision of the workers' compensation commissioner assessing penalties against an insurance company because it did not provide evidence of compliance with section 86.13(4) at the time of its denial of benefits. *See Jenson v. Cummins Filtration-Lake Mills*, File Nos. 5032401/5032402, 2012 WL 4498367, at *3 (Iowa Workers' Comp. Comm'n Sept. 25, 2012) (holding defendant has burden to show compliance with this statutory provision to avoid the mandatory assessment of a penalty).

To counter, HNI argues statutory penalties under section 86.13 are distinct from a bad-faith claim. HNI has the more persuasive position. True, courts can infer bad faith from a violation of section 86.13. *See McIlravy*, 653 N.W.2d at 331–32. But the award of penalty benefits in the workers' compensation arena does not alone guarantee a finding of bad faith. *Id.* HNI tried to investigate Saltern's claim, but was stymied by the lack of medical records tying her carpal tunnel syndrome to her sewing work.

On the undisputed evidence presented with the cross-motions for summary judgment—taken in the light most favorable to Saltern—no reasonable jury could conclude HNI denied Saltern's claim without a reasonable basis. We find no error in the district court's summary judgment rulings. As a result, we affirm.

**AFFIRMED.**